KENNETH H. WINE(#142385)
Hallinan & Wine
345 Franklin Street
San Francisco, CA 94102
Telephone: (415) 621-2400
Facsimile: (415) 575-9930
email: kenwine@hotmail.com

Counsel for ANTOINE FOWLER

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) CR-17-180 RS |
|---|---|
| Plaintiff, | ) |
| | ) DEFENDANT ANTOINE FOWLER'S |
| v. | ) SENTENCING MEMORANDUM AND |
| | ) REQUEST FOR DEPARTURE AND |
| ANTOINE FOWLER, | ) VARIANCE |
| | ) |
| Defendants. | ) Date: January 7, 2020 |
| | ) Time: 2:30 p.m. |
| | ) |
| | HON. RICHARD SEEBORG |

**I.    Background**

On May 15, 2019, Defendant Antoine Fowler plead guilty to a single count of Felon in Possession, 18 U.S.C. §924(g)(1). There was no plea agreement in this case. The PSR calculates a total offense level of 17, with a criminal history category of V.

Mr. Fowler is requesting a departure from the guidelines as to both the offense level, as Mr. Fowler's felon-in -possession is outside the heartland of the guidelines, and as to his criminal history, which is vastly overstated as a criminal history V. Additionally, the Court should grant a variance from the final sentencing guideline calculation, as Mr. Fowler was an undeniable victim of an abuse of governmental power while incarcerated.

**II. Factual Background**

This case represents an outrageous abuse of power by San Francisco County Sheriff Deputy April Myres. The Court sat through her trial and was able to hear the facts twisted by her attorneys for her benefit. Much of her effort involved blaming Mr. Fowler for her own bad acts. It's time to untwist those facts, and see this case for what it is – disgraceful behavior by a police officer who violated her sworn duty to protect the public. The following facts are not in dispute, and not subject to objection by the government.

Defendant Fowler was an inmate in San Francisco County Jail for 6 years, from 2010 to early 2016. He was ultimately convicted of transporting an assault weapon with a gang enhancement and sentenced to time served. During the 6 years he was incarcerated, Mr. Fowler spent 23 hours a day in a small cell intended for short duration incarceration. He was obviously vulnerable and at the mercy of his jailers. One of those jailers was Deputy Myres. She had an 18 month abusive sexual relationship with Mr. Fowler[1]. Deputy Myres seduced Mr. Fowler with money, marijuana, food, dreams of vacations, and offers to provide him a weapon to protect himself when he was released. She manipulated him with confidential police intelligence reports identifying him as a "snitch" whose life was constantly in danger, He deserves no blame for what Deputy Myres did to him.

Upon his release from custody in January 2016, Mr. Fowler immediately moved in with Deputy Myres. She provided Mr. Fowler with access to her official handgun when he was traveling alone in San Francisco. Because of Deputy Myres' access to internal police reports, she knew, and reported to Mr. Fowler, that he was greenlighted for a hit. Due to her position, Mr. Fowler had every reason to believe her. He did not carry the gun when they traveled together.

Having heard a number of phone calls between the two, the Court is surely aware that their relationship was tempestuous. Besides manipulating Mr. Fowler with police intelligence that his life was

---

[1] Although one may be tempted to think that because Deputy Myres was a female, and inmate Fowler a male, that Deputy Myres' abuse of power is somehow lessened. That is a false and fundamentally unfair analysis. The power that Deputy Myres abused comes from the government, and threatened the very person she swore an oath to protect. That is all the Court should consider.

in danger for being a "snitch", she personally threatened Mr. Fowler with death – and her wish that he was dead – on numerous occasions. Ultimately, after a final breakup with Mr. Fowler in which a fight broke out and her son fired her service revolver in her home, Deputy Myres needed to get rid of the gun. She gave it to Mr. Fowler.[2]

  This was perhaps the worst of all her actions. Despite knowing he was a felon, and clearly knowing it was illegal for him to possess a handgun, and knowing he was in fear for his life, Deputy Myres gave Mr. Fowler her gun. Mr. Fowler, having been repeatedly told by Deputy Myres he was greenlighted for being a snitch, kept the gun for his protection. He was subsequently arrested in February 2017. He was promptly, and fully, debriefed by the government.

  These facts are alone so bizarre and outside the norm as to call into question everything Deputy Myres claimed about her relationship with Mr. Fowler, and her actions as a police officer. Her shameless lies to police investigators, insurance agents, Sheriff Department employees, and others were so obvious and foolish that she was convicted of mail and wire fraud by a jury. Her attempts to diminish her role by claiming she had a "momentary weakness" is a farce. She repeatedly and systematically threatened, manipulated and sexually abused an inmate she was charged with protecting over a several month period. Then she lied about it. What happened to Mr. Fowler should never happen to any inmate, whether that inmate is a male or female.

  April Myres was recently sentenced to 14 months in prison. What is perfectly clear is that but for her repeated, continued violations of her oath as a police officer, Mr. Fowler would not be facing prison today.

//
//
//

---

[2] There is no question that the government agrees that Deputy Myres gave Mr. Fowler her gun. Indeed, prior to his plea of guilty, the government specifically requested that Mr. Fowler add to his factual basis for the plea that April Myres "gave the gun to [Mr. Fowler]." The government surely would not ask a defendant to change the factual basis for a plea under oath unless the government believed it to be true.

3

## II. Argument

### a. The Crime Here is Outside the Heartland of Felon in Possession Cases

Mr. Fowler submits that a ground for downward departure exists in that the facts underlying his conviction are outside the heartland of felon-in-possession cases, as set forth in USSG Chap. 1, Pt. A, §4(b):

> "The Commission intends the sentencing court to treat each Guideline as carving out a 'heartland', a set of cases embodying the conduct that each Guideline describes. When a court finds an atypical case, one to which a particular Guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted."

It seems self-evident that a defendant receiving a gun from a police officer who informs the defendant of secret police intelligence reports that he has been greenlighted as a "snitch" falls outside the typical felon in possession guideline. Moreover, Mr. Fowler had additional reason to believe he was in danger. As his former cellmate, Mr. Lascala, testified in his FRCrP 15 deposition, Mr. Fowler was known is the prison as "Fat Rat" Fowler, and Deputy Myers played on those fears in manipulating him. This is not the simple, heartland case of a felon in possession of a gun. The Court should depart.

### b. Mr. Fowler's Criminal History is Overstated

Mr. Fowler has 10 criminal history points. Nine (9) of the points are from relatively minor acts. The first 3 points are from a conviction 14 years ago, when he was 21 years old, and it involved threats he made to his then girlfriend, Andrea Smith, who was keeping him from seeing his new baby. As Ms. Smith now writes, *inter alia,* in support of Mr. Fowler:

> "Over the last 4 years, I've watched Antoine grow into a man of integrity. Antoine and myself has [*sic*] developed a friendship that helps us co-parent to raise our son to be great. . . . To hear [Antoine] is being judged on his character from 14 years ago breaks my heart because I know he is no longer that young boy. Antoine grew up in Bayview Hunters Point and fell into the trap that most boys without guidance, after school programs, and lack of encouragement does. . . I am so grateful that Antoine has made the strides needed to be an amazing father to our child and his other children." *See,* Ex. A, *Letter from his ex-girlfriend and the victim of his crime, Andrea Smith.*

4

While the sentencing guidelines briefly contemplate that youth may be relevant in determining whether a departure is warranted (*See,* U.S.S.G. 5H1.1), the guidelines have not specifically weighed in on the recent series of Supreme Court cases that discuss the clinical functioning of the juvenile mind. As the Court recognized, the same characteristics that render juveniles less culpable than adults — their immaturity, recklessness, and impetuosity — make them less likely to consider potential punishment. *Graham v. Florida,* 130 S.Ct. 2011, 2028 (2010).

As the Supreme Court noted when discussing juvenile crime:

> "As compared to adults, juveniles have a "'lack of maturity and an underdeveloped sense of responsibility'"; they "are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure"; and their characters are *"*not as well formed. These salient characteristics mean that "[i]t is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption." Accordingly, *"juvenile offenders cannot with reliability be classified among the worst offenders. A juvenile is not absolved of responsibility for his actions, but his transgression "is not as morally reprehensible as that of an adult." Graham v. Florida,* 130 S.Ct. at 2022.(Citations omitted, emphasis added.)

The Supreme Court's adoption of a developmental model of culpability should be considered in all sentencing cases where the defendant is a juvenile, or, in Mr. Fowler's case, barely an adult[3]. Mr. Fowler's actions at age 21 were, at best, immature, reckless and impetuous. His crime should not be considered on the same level as a mature adult who commits a felony threat against his significant other.

Mr. Fowler also has another 3 point conviction for using a stolen credit card to purchase a few hundred dollar PS3 gaming system from Best Buy, again, when he was 22 years. As with the above conviction, Mr. Fowler's actions were immature, and not comparable to a typical sophisticated fraud of a con man who steals millions, or even thousands of dollars, nor of a typical credit card fraudster whose crime impacts dozens of people.

---

[3]. For a review of juvenile punishment and analysis of the recent Supreme Court decisions on juvenile punishment, see, e.g., Guggenheim*, M., Graham v. Florida and a Juvenile's Right to Age-Appropriate Sentencing,* Harvard Civil Rights-Civil Liberties Law Review, Vol. 47, p.457 (Spring 2012).

5

His final 3 point conviction is for transporting an assault weapon under California Penal Code §12280(a)(1) with a gang enhancement – a crime that does not exist under federal law or the laws of most states, since assault weapons are perfectly legal in those jurisdictions. Mr. Fowler served 6 years in San Francisco County Jail for this state crime. Adding 3 points to his criminal history for this crime once again overstates the seriousness of his criminal history. Given the nature of these three convictions which overstate – or at least exaggerate – the seriousness of his criminal history, the Court should subtract 6 points from his criminal history calculation and depart downward to a criminal history III.

   **c.**  **Under 3553(a), the Court Should Grant a Variance to Less Time Than the Police Officer Who Put Mr. Fowler in Jeopardy**

With the advent of *U.S. v. Booker*, 125 U.S. 738 (2005), the Court has the power to sentence as it sees fit within the statutory framework of 18 U.S.C. § 3553(a). The restoration of this power gives the Court real discretion to fashion a sentence "*sufficient but not greater than necessary*" to achieve the purpose of sentencing set forth in 18 U.S.C.§3553(a)(2) after considering:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant [§3553(a)(1)];

(2) the need to reflect the seriousness of the offense, respect for the law, deterrence to criminal conduct, the protection of the public, and to provide defendant with needed treatment in the [§3553(a)(2)(A)-(D)];

(3) the kinds of sentences available [§3553(a)(3)];

(4) the advisory – *but non-mandatory* – Sentencing Guidelines [§3553(a)(4) and (a)(5)];

(5) the need to avoid unwarranted sentencing disparity among defendants with similar records and similar conduct [§3553(a)(6)];

and (6) the need to provide restitution to any victim of the offense [§3553(a)(7)].

In this case, the Court must choose the minimally sufficient sentence to fulfill the purposesof sentencing based on a consideration of all §3553(a) factors. *Kimbrough v. U.S.*, 128 S.Ct. 558 (2007).

As argued above, Mr. Fowler's felon in possession case is so bizarre and outside the heartland for a typical felon in possession case, that a variance is also warranted. He was clearly the victim of an abuse of power by a sworn law enforcement officer. His criminal history is largely the result of immaturity, and is not as morally reprehensible as an adult who commits the same acts. How he came to continue to possess a firearm for nearly a year after it was given to him by a police officer for his own protection is another matter.

Antoine Fowler was born and raised in Bayview Hunters Point. His father, a recalcitrant drug dealer who served prison time, was largely absent from his life. Mr. Fowler's mother is mentally ill. She suffers from untreated Bi-polar disorder. He was, naturally, given very little guidance, and largely left on his own to feed and clothe himself, go to school, and, ultimately, just survive.

Mr. Fowler was exposed as a young boy to drugs and gang violence. He smoked marijuana daily since age 11. He saw friends and relatives being murdered as a routine part of life. Although he never joined a gang, he was associated with members of the "BNT" gang. As a young man, he had very little choice. During his treatment at Dolan Mental Health on pretrial release, he was diagnosed with PTSD. Its no wonder, since he was essentially raised in a war zone.

It is also clear that Mr. Fowler made bad choices in keeping the gun from Deputy Myers. His justification as needing it for protection, while based in both actual internal police intelligence reports and jailhouse rumors, cannot completely justify his actions, although they are mitigated by his reasonable fear for his life. Mr. Fowler accepts he deserves punishment. The question is how much is sufficient, but not greater than necessary.

Since this case was filed nearly three years ago, Mr. Fowler has been closely followed by pretrial services and Judge Beeler. An addict who used drugs to self medicate his PTSD, Mr. Fowler had a difficult time adjusting to life outside jail and sobriety. It took almost 18 months of repeated violations for him to get his act together. It would never have happened without the support of Judge Beeler. Despite numerous violations for drug use and missed therapy appointments, Judge Beeler also saw that Mr. Fowler suffered from being locked away in county jail for 6 years, and that it would take

time and effort on his part to succeed. She never spoke down to him and provided continuous encouragement. She noted his progress and kept a close eye on him. As Mr. Fowler has often remarked, Judge Beeler was the first person in authority who believed in him.

Today, Mr. Fowler stands before the Court sober for almost 18 months. He has been employed by JUMP SF (the provider of red rental bicycles) since June 2018, and promoted twice. His employer notes:

> "*Antoine is dedicated to his work, and is someone of high moral character who has had a major impact on our culture here at Jump SF. . . [He] was promoted to Shift Lead position due to his strong work ethic, natural leadership skills, and caring attitude. . . I have been particularly impressed with his ability to come alongside his subordinates to support/coach them on their job duties. . .Antoine truly values his work and the people around him!*" See, Ex. B. Letter from Luke Dickens, Operations Manager at Jump SF.

For a man released from 6 years of solitary confinement with no hope, damaged almost beyond repair by his childhood, and lacking any opportunity, it is impossible to believe Mr. Fowler could have made this progress without the support of Judge Beeler and his pretrial services officer. It is tribute to them that he has turned his life around. But he did. And for that he deserves credit.

Mr. Fowler is also a dedicated father to a 13 year old, and two very small children, a 2 year old and a 6 month old. He is the sole supporter for his family, and is doing it with a smile on his face, proud to be a good father, and willing to work hard to be one.

Whether or not the Court decides to downward depart from the guidelines for this unusual case, it should certainly provide a variance to a level that considers his role as a victim of government abuse, and his real fears from a childhood of violence, stoked by his co-defendant. He committed no crimes other than possessing a gun. He should be given a variance to 12 months and one day. That is sufficient punishment, and appropriately less than the police officer whose abuse of power put him in this position.

//

**III.    Conclusion**

For the reasons set forth above, the Court should depart and/or vary from the guidelines, and sentence Mr. Fowler to 12 months and one day.

HALLINAN & WINE

DATED: December 31, 2019            /s/ Kenneth Wine
Kenneth H. Wine, Esq.
Attorney for Defendant
ANTOINE FOWLER